[No. 2144.]

James Riley *v.* The State.

CIRCUMSTANTIAL EVIDENCE — CHARGE OF THE COURT.— Failure of the trial court to instruct the jury as to the law applicable to circumstantial evidence, when the case for the State rests solely upon that character of evidence, is fundamental error. See the facts of this case in illustration.

APPEAL from the District Court of Tarrant. Tried below before the Hon. R. E. Beckham.

The indictment in this case charged the appellant with the murder of Harry Ball, by cutting the said Ball with a knife, in Tarrant county, Texas, on the 7th day of August, 1884. The conviction was for manslaughter, and the penalty imposed was a term of two years in the penitentiary.

B. W. Woods, the first witness for the State, testified that he knew the defendant, whom he pointed out in court. He also knew Harry Ball, now dead. The witness was in the employ of his brother, Bill Woods, the proprietor of the Mechanics' Exchange saloon, in Fort Worth, Texas, at the corner of Tenth and Houston streets. Witness saw a difficulty between the deceased and the defendant at that saloon on the evening of August 7, 1884. The witness, who had the night watch on that day, went on duty at about 7 o'clock P. M. Deceased and several other parties were in the saloon when the witness went on watch. Some little time later the defendant, with several other parties, came into the saloon. Defendant stepped up to and slapped deceased on the shoulder, and invited him to take a drink. Deceased replied: "Well, I don't know you." Defendant replied: "Well, I know you mighty well," and again invited the deceased to take a drink. Deceased then consented and

drank a glass of beer with the defendant. Defendant and deceased had several words after they drank, but witness was too busy with his customers to pay any attention to what passed between them. Some time later the defendant left the saloon, but presently returned and again walked up to the deceased, who was standing at the bar, slapped him familiarly on the shoulder as he had done before, and again asked deceased to take a drink. Deceased replied: "All right. Now you seem to know me very well, please tell me who you are, for I don't know you." Defendant replied: "My name is fighting Jim Riley, and I can whip any man in Fort Worth who don't weigh more than one hundred and sixty pounds." Deceased answered: "That is a mighty big word. There are a heap of men in Fort Worth, but I know you don't mean that for me, for I weigh one hundred and eighty pounds, and can whip any man in Fort Worth who don't weigh any more than that." From this the parties passed to the use of hot words, until the witness, seeing that a difficulty was likely to result, passed from behind the counter, got between them, and, speaking first to one and then to the other, told them that unless they stopped their dispute about fighting, he would. have to put them out of the saloon. Witness succeeded in getting the deceased quieted, but the defendant would not be pacified, but insisted that he wanted to fight, and attempted to pass the witness in order to get at deceased. Witness then took him by the arm and pressed him gently out of the door to the sidewalk, where he released him. On being released the defendant attempted to re-enter the saloon. Witness confronted him and told him not to come back into the house; that he was not going to permit him to provoke a difficulty there; that he had so far used gentle means to prevent a disturbance, but would resort to violent means if he persisted in his attempt to re-enter the house. Witness at that time was standing in the door, and the defendant about three feet from the door on the sidewalk. Defendant then began to curse deceased, who was then in the saloon behind the screens. It was then dark outside of the saloon. Witness, while standing in the door, and while defendant was cursing the deceased, saw the defendant change something, he did not know what, from his left to his right hand pants-pocket. The witness could not remember all that the defendant said while out on the pavement. He remembered, however, that he challenged deceased to come out of the saloon, denounced him as a coward with not enough backbone to leave the saloon and fight.

When the witness started back into the saloon, which he did while

defendant was still cursing the deceased, he met the deceased between the screen and the door, and took hold of him to prevent him from going out. Witness had not heard deceased say anything up to this time since he put the defendant out of the saloon. Deceased swung around and released himself from witness, and witness did not interfere further. Deceased stopped at the door and asked defendant, who was then standing on the sidewalk, about three feet distant: "Did you call me a G—d d—d coward?" Defendant replied: "Yes; and you are a G—d d—d cowardly son-of-a-b—h." The two men then closed with each other and passed several blows; the witness was unable to say which struck first. Presently they clinched, and the deceased pushed the defendant towards the outer edge of the sidewalk, where some beer kegs were piled up. Then they swung around towards the house, near which they fell, defendant below and deceased on top. Witness then pulled the deceased off the defendant, and as he did so the deceased kicked at the defendant, but witness was unable to say whether or not he struck him with his foot. Witness pushed deceased back towards the saloon, and defendant got up, mounted his horse and rode off. Deceased went back into the saloon, whither the witness presently followed him, and told him that the defendant had gone off, and that he, deceased, had better get his team, which was standing on the street near the side door at the end of the saloon, and go home. Deceased stepped to the sidewalk, and witness thought he was gone. In a very few moments deceased stepped into the door and called to witness: "Come here, Ben, with a light; that snoozer has cut me." Witness replied: "I reckon not, Harry." Deceased replied: "Yes, he has; come quick." Witness having none other than gas lights about the saloon, took a match and went to the deceased, examined him, and found that he had in fact been cut in the abdomen, and that his bowels were protruding, and that deceased was trying to hold them in with his hands. Deceased then appealed to witness to have the defendant arrested. Witness had deceased taken into the back room of the saloon, and placed on the floor on a blanket, and went for Doctor Adams. Ball was presently taken home, and witness saw him no more.

Cross-examined, the witness testified that he did not see a knife in the defendant's hand, and it was too dark for him to distinguish the thing he exchanged from one pocket to the other. Deceased was a larger man than the defendant, would weigh perhaps one hundred and eighty pounds, was about fifty-five years old, and in strength was about an average man. His hair was turning gray. The

defendant was apparently about forty years old, and weighed about one hundred and sixty pounds. Witness did not know which of the parties struck the first blow. They struck several blows each. Witness did not think that deceased got defendant pressed against the stack of beer kegs. He could not say that, but for the kegs, defendant would have been forced into the gutter. Witness saw the defendant and deceased drink together once, but could not now remember whether or not they drank the second time defendant called for liquor. Witness thought the defendant somewhat under the influence of liquor, but saw him take only one drink. Witness did not put the defendant out of the saloon because he was friendly to deceased, and not to him, but because he persisted in an effort to provoke a fight in the saloon, and because he was the nearest of the two to the door. Witness wanted both of the men out of his house, and made but little effort to prevent the deceased from going out just before the struggle on the pavement. Defendant had short whiskers, and was not fresh shaved.

Doctor W. A. Adams testified, for the State, that he was called to see the deceased professionally on the night that he was cut. He found deceased lying in the back room of the Mechanics' Exchange saloon in Fort Worth. The witness Ben Woods was present. Deceased was suffering from an incised wound in the stomach, from which the intestines were protruding. One of the bowels was slashed or cut. The wound had the appearance of having been made with a knife. Witness replaced the intestines as well as he could, and had the deceased taken home, and treated him until he died from the wound, a week or ten days later.

Allen Johnson, colored, testified, for the State, that he saw the difficulty between the deceased and the defendant on the pavement in front of the Mechanics' Exchange saloon. He saw the deceased step out of the saloon and knock the defendant down twice. Witness heard both the defendant and the deceased cursing and swearing at each other, but could not remember what either said to the other. When they were separated, the defendant mounted his horse and left. In reply to a question by the county attorney, the witness testified that, in a conversation with the county attorney, he, witness, said that he saw the defendant standing outside of the saloon, and heard him cursing deceased, who was then standing mute inside of the saloon; that deceased, being challenged by defendant with oaths and abuse, to come out and fight, did come out, and that they proceeded to fight until they were separated, when defendant got on his horse and rode away. Witness told the county

attorney that he did not hear deceased utter an oath. He did not tell the county attorney that deceased knocked defendant down twice. Witness declined to talk to the defendant's attorney about this case, and had not discussed it with any one.

Deputy Sheriff J. C. Thompson testified, for the State, that he arrested the defendant about 9 o'clock on the morning after the cutting of deceased. He found defendant about twelve or fifteen miles distant from Fort Worth, on the Cleburne road, working at a threshing machine. ' Defendant was clean shaved when witness arrested him. Defendant did not resist arrest, but did not see witness until the witness reached him. Witness saw some slight bruises about the defendant's face, but saw no cuts. The State closed.

A. M. Cole was the first witness for the defense. He testified that when the fight between defendant and deceased occurred he was rooming on Houston street, in Forth Worth, near' the Mechanics' Exchange saloon. He was sitting on the street in front of his boarding-house and saw that part of the fight which occurred on the pavement outside of the saloon. Witness heard the deceased and defendant cursing each other in the saloon, and saw the deceased step up to and tap the defendant on the shoulder, and heard him say to defendant: "I can lick any man who don't weigh over one hundred and eighty pounds." Defendant replied: "I can lick any man who don't weigh over one hundred and fifty pounds." They cursed and abused each other until Ben Woods pushed the defendant out of the saloon door to the pavement. Defendant stood there a moment or two cursing, when deceased came out, knocked defendant down three times, and then picked him up and threw him bodily against the wall. He then proceeded to beat the defendant, when Ben Woods pulled him off and took him back into the saloon. Defendant then got on his horse and rode off. Deceased was a much larger, and, in the opinion of the witness, a much stouter man than the defendant. The difference in weight of the two men must have been twenty-five pounds in favor of deceased. Witness did not see the defendant strike the deceased a single blow.

Cross-examined, the witness said that he was in the court-room in conference with the defendant and his attorneys during the time the jury was being impaneled, and until he was sworn and placed under the rule. Witness said, on direct examination, that deceased, while in the saloon, walked up to defendant, slapped him on the shoulder, and said that he could lick any man who did not weigh more than one hundred and eighty pounds. As a matter of fact,

witness could not see into the saloon from where he stood, when this happened, but he knew defendant's voice, and knew that the words stated were not spoken in defendant's voice. Witness had never seen defendant before that evening. He saw him in town that evening riding a horse, and heard him talk. Witness did not know the deceased. Witness did not see either of the men until Ben Woods put the defendant out of the saloon. Defendant then stood on the sidewalk cursing, and deceased cursed from the inside of the saloon.

Bill Woods, the brother of the State's witness Ben Woods, testified that he knew the deceased in his life-time. He was a much larger and stouter man than the defendant. Witness knew deceased's reputation for peace and violence. When sober he was regarded as a peaceable, quiet citizen, but when drunk he was very overbearing.

George Davenport, for the defense, testified exactly as did Bill Woods, and, in addition, that the reputation of the defendant as a peaceable, law-abiding man was good.

Hughes, Farmer, Tom and Robert Stout, and Daling, testified, for the defense, that defendant's reputation as a peaceable, quiet citizen was good. Farmer said that deceased was regarded as a peaceable man when sober, but quarrelsome when drunk.

The motion for new trial raised the question involved in the opinion.

*Byron G. Johnson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. After a wordy altercation in the saloon, appellant and deceased, Ball, got together outside on the sidewalk, and fought. When separated appellant got upon his horse and rode off. Ball went back into the saloon and, after a short while, was prevailed upon by the saloon keeper to go and get his wagon and go home. He went out of a back door to get his wagon. It was a dark night. It does not appear that any one saw him, or what took place when he was out at this time. He returned in a short time through a back door into the back room of the saloon, and called to the saloon keeper for a light, saying: "Bring a light here; that snoozer has cut me." On going to him with a light, the bar keeper found that his abdomen was cut open and his entrails were protruding.

If appellant had cut him with a knife during the fight on the sidewalk, then neither deceased nor any one else appears to have known it. No one saw appellant with a knife at that time and in that rencounter. If appellant met deceased and cut him when deceased went for the wagon, then no one was present and saw the cutting. Deceased himself did not say that defendant cut him. That defendant cut him is solely an inference derivable and deducible from the facts and circumstances transpiring before he was found to be cut. It was a case clearly of circumstantial evidence, and the court should have charged the law applicable to such a case. A failure to do so is fundamental error. (*Vaughn* v. *The State*, 17 Texas Ct. App., 562, and authorities collated; *Schindler* v. *The State*, 17 Texas Ct. App., 408; *Black* v. *The State*, 18 Texas Ct. App., 124; *Wright* v. *The State*, 18 Texas Ct. App., 358.)

*Reversed and remanded.*